# CIVIL COVER SHEET

⁶JS 44  (Rev  12/07)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ROBERT A. MARIOTTI, SR | MARIOTTI BUILDING PRODUCTS, INC |

**(b)** County of Residence of First Listed Plaintiff   **LACKAWANNA**
(EXCEPT IN U S  PLAINTIFF CASES)

County of Residence of First Listed Defendant   **LACKAWANNA**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

SEE ATTACHED SHEET

Attorneys (If Known)

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question (U.S. Government Not a Party)
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R R  & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl  Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl  Ret  Inc Security Act | ☐ 870 Taxes (U S  Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer  w Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer  w Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN  (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity)
42 U.S. 2000(3)
Brief description of cause:
Civil Rights Act of 1964

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F R C P  23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____  DOCKET NUMBER _____

DATE  1/7/2011

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG JUDGE_____

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __24 Oakwood Drive, Old Forge, PA 18518__

Address of Defendant: __1 Louis Industrial Drive, Old FOrge, PA 18518__

Place of Accident, Incident or Transaction: __Pennsylvania__
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))　　　Yes☐　No☒

Does this case involve multidistrict litigation possibilities?　　　Yes☐　No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

　　　Yes☐　No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

　　　Yes☐　No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

　　　Yes☐　No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?

　　　Yes☐　No☒

---

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations

7. ☒☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
　　(Please specify)

**B.** *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
　　(Please specify)

---

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, __Clifford B. Cohn__
__Thomas H. Roberts__, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: __01/07/11__　　Clifford B. Cohn　　　　　25847
　　　　　　　　　　　　Thomas H. Roberts　　　　　26014
　　　　　　　　　　　　　Attorney-at-Law　　　　　Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __01/07/11__　　Clifford B. Cohn　　　　　25847
　　　　　　　　　　　　Thomas H. Roberts　　　　　26014
　　　　　　　　　　　　　Attorney-at-Law　　　　　Attorney I.D.#

CIV. 609 (6/08)

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: __24 Oakwood Drive, Old Forge, PA 18518__

Address of Defendant: __1 Louis Industrial Drive, Old FOrge, PA 18518__

Place of Accident, Incident or Transaction: __Pennsylvania__
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No☒

Does this case involve multidistrict litigation possibilities?   Yes☐   No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐   No☒

**CIVIL: (Place ✔ in ONE CATEGORY ONLY)**

**A. *Federal Question Cases:***
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

**B. *Diversity Jurisdiction Cases:***
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, __Clifford B. Cohn / Thomas H. Roberts__, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: __01/07/11__   Clifford B. Cohn / Thomas H. Roberts
Attorney-at-Law

25847
26014
Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __01/07/11__   Clifford B. Cohn / Thomas H. Roberts
Attorney-at-Law

25847
26014
Attorney I.D.#

CIV. 609 (6/08)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| ROBERT A. MARIOTTI, SR. | : | CIVIL ACTION |
| v. | : | |
| MARIOTTI BUILDING PRODUCTS, INC. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                       ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                               ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.       ( X )

| | | |
|---|---|---|
| 01/07/11 | Clifford B. Cohn<br>Thomas H. Roberts | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 545-9660 | (215) 925-5991 | CBCOHN¶CBCOHN.COM |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
In the Eastern District of Pennsylvania

ROBERT A. MARIOTTI, SR.,
                              Plaintiff,
vs.                                                    Case No._____
MARIOTTI BUILDING PRODUCTS, INC.

                              Defendant.

## COMPLAINT

Comes now Robert A. Mariotti, Sr., by counsel, and files this complaint against

defendant Mariotti Building Products, Inc.  Robert A. Mariotti, Sr., has brought suit under Title

VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act,

("PHRA"), and under other state laws alleging, *inter alia,*  Defendant Mariotti Building Products

discriminated against him because of his religion.

### PARTIES

1. Plaintiff Robert A. Mariotti, Sr., is a citizen of the United States of America and of Italy

   and is currently a resident of the Commonwealth of Pennsylvania.  Robert A. Mariotti,

   Sr., was employed by defendant Mariotti Building Products, Inc., until January 10, 2009.

2. Defendant Mariotti Building Products, Inc., (referred to herein as "MBP") is a

   corporation organized under the laws of Pennsylvania, with its principal place of business

   at 1 Louis Industrial Drive, Old Forge, Pennsylvania 18518.  MBP employs more than 15

   employees and is a closely held family business with fewer than 100 shareholders,

   currently qualified as a sub-S corporation under the Internal Revenue Code.  Eugene L.

   Mariotti, Sr., has been president of the corporation for years.  Louis C. Mariotti has been

1

Treasurer of the corporation for years.  Both Eugene L. Mariotti, Sr., and Louis C. Mariotti served as directors with plaintiff until August 6, 2009. Eugene L. Mariotti, Sr., continued as a director after August 6, 2009.

## JURISDICTION

3. Jurisdiction in this court is based upon 28 U.S.C. § 1331 and § 1343(a)(4) and Title VII of the Civil Rights Act of 1964.  Plaintiff further requests that this Court invoke its pendent jurisdiction to hear and decide the claims arising out of state law pursuant to 28 U.S.C. § 1367.

4. Within 300 days of the events complained of herein, Plaintiff filed a complaint (Charge Number 530-2010-00352) with the Equal Employment Opportunity Commission ("EEOC") and with Pennsylvania Human Rights Commission ("PHRC"), which has a sharing agreement with the EEOC.  Plaintiff has received a right to sue letter from the EEOC and this suit is filed within 90 days of the receipt of the right to sue letter.  Plaintiff filed his charge with the PHRC more than 1 year before this suit is filed.

## VENUE

5. Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(c), the defendant being a Pennsylvania corporation subject to personal jurisdiction in that state, Pennsylvania being a state with more than one judicial district, and the defendant corporation having sufficient contact through its business dealings at the time this action is commenced to subject it to personal jurisdiction in this district if this district were a separate state. MBP's contacts with this district include but are not limited to a relationship with CertainTeed, a corporation whose headquarters are located in Valley Forge, Pennsylvania, within this judicial district.  CertainTeed is one of MBP's largest suppliers,

and MBP regularly conducts business with CertainTeed through its representatives in

Valley Forge, including negotiating contracts worth millions of dollars. MBP also

conducts significant business with Philadelphia Reserve Supply Company, a home

building products supplier located in Croydon, Pennsylvania, within this judicial district.

MBP also buys a significant amount of fireplace related products for resale from Pierce-

Phelps, Inc., whose corporate offices are located in Philadelphia, Pennsylvania. Among

the other regular and substantial contacts that MBP has with businesses located in the

Eastern District of Pennsylvania are regular contacts with Reeb Willwork, Inc., which

sells millwork and windows products at Reeb's flagship location in Bethlehem,

Pennsylvania; Eastern Engineered Wood Products in Bethlehem, Pennsylvania;

Wholesale Millwork located in Reading, Pennsylvania, and others.

## GENERAL FACTS

6. MBP was formed on August 29, 1947, and was formerly known as Locket Lumber. For
   many years Lockett Lumber, which changed its name to "Mariotti Lumber," operated as
   a small lumber yard.

7. Plaintiff and his two brothers, Eugene L. Mariotti, Sr., and Louis C. Mariotti, joined the
   business in the 1960s.

8. MBP experienced substantial growth over the past 40 years with annual sales
   skyrocketing from less than $250,000 to over $60 Million and it is now recognized as the
   area's best source for building materials. MBP is well known throughout Central and
   Eastern Pennsylvania.

9. Robert A. Mariotti, Sr., was responsible for developing and growing a number of areas of
   business at MBP, including but not limited to drywall, fiberglass, window sales, and

3

lumber. Robert A. Mariotti, Sr., trained staff to take over day to day management of some of the products lines, including but not limited to lumber and wood panel products, windows and other duties.

10. At all times herein Robert A. Mariotti, Sr., was qualified for the positions he held for over 45 years.

11. Robert A. Mariotti, Sr., intended to work at MBP until at least reaching age 75. (Eugene L. Mariotti, Sr. continues to be employed by the company and is presently 69 years of age. Louis "Babe" Mariotti (father of Eugene, Robert, and Louis Jr.) worked at MBP until he was 84 years of age, although for estate planning purposes ceased to receive a paycheck at the age of 70 years.)

12. Robert A. Mariotti, Sr., was employed by MBP until January 10, 2009, and principally managed the manufactured housing sales division of the company together with customer credit, bill paying, and purchasing and inbound transportation of products lines including but not limited to drywall, insulation, lumber, tile backer-board. (From approximately 1990, Robert A. Mariotti, Sr., phased out of the lumber division after training his son Paul C. Mariotti to assume responsibilities for lumber.)

13. Robert A. Mariotti, Sr., one of the founders of MBP, served as a member of the Board of Directors until August 6, 2009, when the shareholders did not re-elect him as a director.

14. In addition to his other duties at MBP, in January 2009 he was serving MBP as Vice President and Secretary.

15. Together with Louis "Babe" Mariotti, Plaintiff Robert A. Mariotti, Sr., and his two brothers built the business.

16. After approximately 20 years of developing the business, Robert A. Mariotti, Sr., was the first of the founding brothers to bring his children, Robert J. Mariotti and Paul C. Mariotti, into the business. He did so in an effort to build the organization and the business. Plaintiff's two sons entered the business full time directly from high school in and around 1984 and 1986, respectively. Eugene L. Mariotti, Sr.'s oldest children, Joseph Mariotti (except for a 2 year stint before law school) and Louis Mariotti did not join the fledgling business but pursued other paths in medicine and law. After MBP began to experience substantial success, Eugene L. Mariotti, Sr.'s younger children, Richard Mariotti and Eugene Mariotti, Jr., entered the business full time in and around 1988 and 1994, respectively. After approximately 30 years of developing the business, Louis C. Mariotti's children Louis Mariotti, IV, Michael Mariotti and Gregory Mariotti, entered the business in and around 1990, 1992 and 1995 respectively.

17. Plaintiff was not harassed or subjected to a hostile work environment at MBP prior to 1995, when his faith and religious practice was not an integral part of life, but only a compartmentalized distraction, and during which time he attended St. Mary's Roman Catholic Church with the rest of the Mariotti family.

18. In July 1995, plaintiff's religious path changed when plaintiff experienced what he described as a spiritual awakening, in which among other things God became personal to plaintiff and the center and purpose of his life.

19. Plaintiff began to regularly attend meetings in which Mary Ellen Lukas spoke and began to regularly participate in the religious activities of a lay ministry known as "Our Father's Divine Work" (referred to herein as "OFDW").

20. Lay ministries have existed within the Roman Catholic Church for centuries, including but not limited to the Secular Franciscan Order ("SFO"), a community of Roman Catholic men and women in the world who seek to pattern their lives after Christ in the spirit of St. Francis of Assisi. Secular Franciscans are tertiaries, or members of the Third Order of St. Francis founded by St. Francis of Assisi 800 years ago. Originally known as the Brothers and Sisters of Penance, the Order is approved and recognized by the Holy See by the official name of Ordo Franciscanus Saecularis ("OFS"). It is open to any Roman Catholic not bound by religious vows to another Religious Order. It is made up of the laity (men and women) and also secular clergy (deacons, priests, bishops). Although Secular Franciscans make a public profession, they are not bound by public vows as are religious orders living in community. The Third Order Regular ("TOR"), which grew out of the Third Order Secular, do make religious vows and live in community. The Holy See has entrusted the pastoral care and spiritual assistance of the Secular Franciscan Order, because it belongs to the same spiritual family, to the Franciscan First Order (Friars Minor) and Franciscan Third Order Regular.

21. OFDW is a Catholic lay ministry founded by Mary Ellen Lukas.  She is also the Reverend Mother of The Order for the Missionaries of the Eucharistic Christ, an order of Catholic sisters and brothers.

22. Plaintiff moved his Church membership from St. Mary's Roman Catholic Church, in Old Forge, Pennsylvania, the church to which his family and other officers and shareholders of MBP belonged, to St. Nicholas Byzantine Catholic Church in Old Forge, Pennsylvania.

6

23. Having built the business, the founding brothers each took advantage of the enterprise and organization, pursing personal interests in addition to the work. Eugene L. Mariotti, Sr., pursued golf, hunting, and a second home in Florida. Louis C. Mariotti pursed fast cars, boating on his yacht, and a second home in Florida. Beginning in 1995, plaintiff Robert A. Mariotti, Sr., pursued his religious endeavors with Our Fathers Divine Work instead of hunting, golfing and other pursuits previously approved by his brothers.

24. However, in response to the religion and religious practice of plaintiff, MBP and its officers and directors began a systematic pattern of antagonism towards plaintiff, including but not limited to (a) negative, hostile and/or humiliating statements directed at plaintiff or his religious affiliation, (b) disparate treatment and (c) discrimination.

25. Louis C. Mariotti, Louis C. Mariotti, Jr, another MBP employee Dave Carey, and other employees at MBP frequently and regularly referred to plaintiff as "Reverend Bob" from 2000 through the end of 2008.

26. In the summer of 2008, offering an explanation for his failure to invite plaintiff on the yacht of Louis C. Mariotti, Louis C. Mariotti said to plaintiff, "Oh, you can't come on the yacht – you have to ask your spiritual wife," insinuating that plaintiff was controlled and subject to Mary Ellen Lukas, the founder of OFDW.

27. On several occasions, within the presence and hearing of plaintiff, Louis C. Mariotti, referred to Mary Ellen Lukas as "Bobby's spiritual wife" intending to insult, humiliate and ridicule plaintiff.

28. In and around 2005, Louis C. Mariotti said to plaintiff "So when are you going to be drinking the 'Jonestown punch?'" deriding the religious practice of plaintiff and insulting and ridiculing plaintiff by identifying the lay Catholic ministry of OFDW with the

7

infamous cult led by Jim Jones that ended on November 18, 1978, with the mass

murder/suicide of 918 people at "Jonestown," the popular name for the intentional

community in northwestern Guyana formed by the Peoples Temple, an American cult led

by Jim Jones.

29. On multiple occasions, Louis C. Mariotti in the presence and hearing of plaintiff referred

to OFDW as a "cult."

30. Louis C. Mariotti encouraging other employees to follow in his behavior asked plaintiff,

"Are you still chasing Jesus around the country?" This insult was made with the intention

of mocking and ridiculing plaintiff's practice of traveling to listen to Mary Ellen Lukas

speak at numerous churches in numerous states and around the world.

31. In approximately 2005, Louis C. Mariotti, in the presence and hearing of plaintiff insulted

Mary Ellen Lukas by asking her "So you're an exhibitionist like Jesus?"

32. For many years MBP, with the approval and direction of founders Eugene L. Mariotti,

Sr., plaintiff Robert A. Mariotti, Sr., and/or Louis C. Mariotti, provided special favors,

terms or outright donations to various charities or non-profit organizations.

33. However, Eugene L. Mariotti, Sr., and Louis C. Mariotti intervened to remove special

pricing for OFDW, and beginning around 2007 began invoicing OFDW for time

expended using MBP trucks and equipment, while other employees were not similarly

invoiced for use of the MBP trucks and equipment used for customers and noncustomers.

At the time OFDW continued as a customer of MBP.

34. Although plaintiff's wife Kathleen Mariotti had approved of and participated in OFDW,

on October 7, 2008, at the viewing the night before the funeral of plaintiff's wife

Kathleen Mariotti, who died of complications resulting from approximately 46 years of

8

severe diabetes, Jeannie Mariotti, wife of Eugene L. Mariotti, Sr., rudely informed Mary

Ellen Lukas that she was not welcomed at the viewing, notwithstanding that plaintiff had

requested that Mary Ellen Lukas accompany him at the viewing.  Eugene L. Mariotti was

present and observed this conduct but failed to intervene or to restrain his wife.

35. In preparation for the funeral arrangements for Louis S. "Babe" Mariotti, the founder of

MBP, on January 4, 2009, Eugene L. Mariotti, Sr., notwithstanding his own Catholic

affiliation, made angry and rude and vulgar comments intended to ridicule and injure

plaintiff and plaintiff's strong religious beliefs, stating among other things, "Mary was

not a virgin," "The Eucharist is only a symbol," and "You left our church," while Louis

C. Mariotti referred to the lay ministry OFDW in derogatory terms like "cult".

36. At that time, Eugene L. Mariotti, Sr., attacked plaintiff for inclusion of others of the lay

ministry in the funeral of the founder of MBP, stated to plaintiff, "What the f_ck did you

get your own limo for?"

37. Included in Robert A. Mariotti, Sr.'s religious observance and practice is to give God

credit for his gifts and to recognize his father's godly example.  Two (2) days before the

company acted and four (4) days before Mariotti Building Products notified Robert A.

Mariotti, Sr., that he was terminated, Robert A. Mariotti Sr., delivered a eulogy at his

father's funeral.  In the eulogy of his father, Robert A. Mariotti, Sr., spoke of his faith,

and as a direct result MBP retaliated and notified the plaintiff of his termination by

Mariotti Building Products.  Some of the remarks by Robert A. Mariotti, Sr., that resulted

in his termination, include the following:

    a.  "I believe my father knew well that God deserves the credit for all the good that
        comes into our lives…"

b. "This business is a gift from God that has given many members of my family wonderful opportunities to be successful and to have a good comfortable life which can be enjoyed."

c. "the greatest contribution my father Louis gave to this life that I can personally speak for is my own life and all that he taught me, and all that he gave me to help me be the kind of person God wants me to be."

d. "I am thankful to my father for passing on part of this business to me but I see that everything good in my life comes from God first."

e. "Some people will talk behind your back and hurt you deeply, but you go on because it is the right thing to do. Some close to home break bread with you and yet only want money or something for themselves that comes at your expense. That's business, that's life. I watched how my father endured these difficulties and I learned from him how to endure them myself in my own circumstances, whether in business or my personal life. But I am thankful to God and to my Dad for teaching me how to be me. As I said I made some bad decisions over the years, but the best decisions I made were to turn to God with all my heart...and of this decision I am the most proud. Because that is me, and I think being in love with God the way I am gives my Dad one of the best honors he could receive."

f. "Jesus says very strongly in Scripture that we must love God with all of our heats, all of our minds, all of our souls, and all our strength. Not some of our hearts, some of our souls, some our minds, and so forth. He said ALL. That's in my heart and soul to do. Not everyone cares for that about me, and a lot of people deride me and try to make a fool out of me for how I love God, a lot of times behind my back. But they can say what they want, because I am only trying to do what Jesus said was essential. If everyone in business got too sensitive about what everyone says about them, no one would be successful or get anything done. But I remember my father's attitude. "Get it Done." And so the unhappiness and resentment that rules the hearts of other is not something that will ever deter me. My father taught me not to let this hold me back in business, and my personal life too. Because of Our Lord and my father's good example, I feel inspired every day to give my best to the business."

g. "Thank you Jesus for my father Louis."

38. The day of the funeral of Louis "Babe" Mariotti and within hours of the internment,

Robert A. Mariotti, Sr., received a text message on his phone from Richard Mariotti, one

of the employees and shareholders of the company reflecting the animosity of the officers and directors of the company toward plaintiff's practice of his religion.  The message sated, "The speech u gave today was a disgrace and u should be ashamed of yourself 4 the rest of ur life," and was dated January 6, 2009 at 4: 40 p.m.

39. Just two (2) days after the funeral, on January 8, 2009, without informing Robert A. Mariotti, Sr., that they were meeting, the officers and directors of MBP met and voted to terminate Robert A. Mariotti, Sr., from MBP.  Robert A. Mariotti was a shareholder on that date.

40. At approximately 1:00 p.m. on January 10, 2010, Robert A. Mariotti, Sr., received a voice message on his cell phone from his son, one of the shareholders and employees of MBP, stating "Dad, everyone is extremely upset over your remarks at grandpa's funeral. I mean really upset.  I'll talk to you about it when you come home.  I love you.  Bobby." Minutes later Robert A. Mariotti, Sr., sent a prompt response via text messages.

41. Later that same day, on January 10, 2010, without prior notice, a fax was sent to Robert A. Mariotti, Sr., in Mexico where he was on vacation, stating among other things, with emphasis added:

> "The shareholders of Mariotti Building Products asked for a meeting which was held on Thursday, January 8, 2009.  With the exception of you, all shareholders were in attendance.  The purpose of the meeting was to discuss you future status as an employee of Mariotti Building Products.
>
> It is with deep regret and sadness that by **unanimous vote** we have **decided to terminate your employment** with Mariotti Building Products **effective immediately**.
>
> By this termination, the following benefits will be addressed as follows:
> 1) Car owned by the company will be transferred to you personally at no cost to you.  You will be responsible for all costs associated with your car including insurance, fuel, etc...

2) Health Insurance will be your responsibility
3) Cell phone will be cancelled
4) ADT Code to building will be cancelled
5) All vendors, customers and employees will be notified
6) You are no longer authorized to sign any type of company check or use any company credit cards
7) Your office at 1 Louis Industrial Drive will no longer be available to you
8) Any and all company benefits the may apply in the future will not be available to you

Your share of any draws from the corporation or other entities will continue to be distributed to you.  We have enclosed **a letter of resignation as an option to you which would avoid embarrassment to yourself**.  We ask that you consider signing this resignation.

We regret **this action which you have brought upon yourself**.  Good Luck and God Bless you in the future.

42. The hostility to Robert A. Mariotti, Sr.'s faith and practice is evident in the timing and severity of the reaction from Mariotti Building Products to Robert A. Mariotti, Sr.'s faith and practice, including but not limited to the Eulogy.

43. The first fax as described above was transmitted from Eugene's home fax to a hotel which Robert A. Mariotti, Sr., received when he returned to his hotel at around 5:00 p.m. Robert A. Mariotti, Sr., did not respond to this fax.

44. Without any response from Robert A. Mariotti, Sr., the company then tracked him, learning that he had moved to another hotel.  (Robert A. Mariotti, Sr., moved to a hotel with a on-staff doctor, as one of the party with whom Robert A. Mariotti, Sr., was traveling had taken ill)   The company had surreptitiously engaged in increased scrutiny and surveillance upon Robert A. Mariotti, Sr., over and above any surreptitious surveillance that Louis C. Mariotti used to track activities and conversations of other MBP employees.

12

45. Three (3) days after the first facsimile referenced above, the company sent a second fax (identical except for the cover sheet) to the second hotel. The fax arrived at 6:44 p.m. in the evening.

46. Additionally, copies of the letter were hand delivered to Robert A. Mariotti, Sr.'s mailbox on his front porch at 20 Butler Street, Old Forge, Pennsylvania and sent by mail to 24 Oakwood Drive, Old Forge, Pennsylvania, where he was then regularly residing.

47. The termination letter suggests that the shareholders met on January 8, 2009, to "**discuss your future status as an employee of Mariotti Building Products**." Although subtle, the termination letter closes with additional hostility, "We regret this action which you brought upon yourself. Good Luck and God Bless you in the future." Given the fact that the other officers and directors of Mariotti Building Products did not routinely state "God Bless you" to Robert A. Mariotti, Sr., the expression coupled with the termination smacks of sarcasm. Further, given the timing and other circumstances, there is no doubt that it is Robert A. Mariotti, Sr.'s religious practice that Mariotti Building Products is referring to when they speak of "you brought [this] upon yourself."

48. At the time of this notification, Robert A. Mariotti, Sr., was fulfilling his duties and/or obligations to the company.

49. At the time of this notification, over the six year period between January 1, 2003, and December 31, 2008 the divisions at MBP overseen by Robert A. Mariotti, Sr., earned profit of $15,474,887.67 which was $5,375,056.33 in excess of those divisions overseen by Eugene L. Mariotti, Sr.

50. Robert A. Mariotti, Sr., was an employee of MBP as that term is defined under Title VII.

51. MBP had the power to, and in fact did or did attempt to, terminate Robert A. Mariotti, Sr.

13

52. Robert A. Mariotti, Sr., reported to his brother, Eugene, and to the Board of directors.

53. Robert A. Mariotti, Sr., did not control MBP.  He held only a minority interest in the company, had no veto power over MBP or its decisions, and was regularly excluded from important decisions in MBP.

54. Robert A. Mariotti, Sr., was not personally liable for tort claims against MBP, which was not a professional corporation.

55. Robert A. Mariotti, Sr., along with Eugene and Louis, signed an agreement that impliedly recognized him as an employee, albeit with a right to work at the company, a right also given to the children of the founders.

56. Plaintiff's religion was a or the determining factor in MBP's decision to terminate and/or constructive discharge of plaintiff.

57. Plaintiff's religion was a or the motivating factor in MBP's decision to terminate and/or constructive discharge of plaintiff.


## Deviations from Standard Procedures
## Employment

58. MBP deviated from standard procedures, established rules or laws and/or failed to follow its own policies when its shareholders met determined to terminate Robert A. Mariotti, Sr., and then notified Robert A. Mariotti, Sr., that he was terminated.

59. Under Pennsylvania law at 15 Pa.C.S. § 1702, notice of a shareholder meeting must "be given to the person either personally or by sending a copy thereof: (i) By first class or express mail, postage prepaid, or courier service, charges prepaid, to his postal address appearing on the books of the corporation or, in the case of directors, supplied by him to

the corporation for the purpose of notice. Notice pursuant to this subparagraph shall be deemed to have been given to the person entitled thereto when deposited in the United States mail or with a courier service for delivery to that person. (ii) By facsimile transmission, e-mail or other electronic communication to his facsimile number or address for e-mail or other electronic communications supplied by him to the corporation for the purpose of notice. Notice pursuant to this subparagraph shall be deemed to have been given to the person entitled thereto when sent."

60. Additionally under Pennsylvania law, 15 Pa. C.S. § 1702, "A notice of meeting shall specify the day and hour and geographic location, if any, of the meeting and any other information required by any other provision of this subpart."

61. Additionally under Pennsylvania law, 15 Pa. C.S. § 1704, "Written notice of every meeting of the shareholders shall be given by, or at the direction of, the secretary or other authorized person to each shareholder of record entitled to vote at the meeting at least:.... five days prior to the day named for the meeting...."

62. Similarly, the directors could not meet without notice to Robert A. Mariotti, Sr., under Pennsylvania law, 15 Pa. C.S. § 1703, which provides in pertinent part that "unless otherwise provided in the bylaws, written notice of every special meeting of the board of directors shall be given to each director at least five days before the day named for the meeting."

63. Among other provisions violated by MBP's officers, directors and shareholders, the bylaws of MBP require that any "[s]pecial meeting of the shareholders may be called at any time by the President, or the Board of Directors, or the holders of not less than one-fifth of all the shares outstanding and entitled to vote. At any time, upon written request

15

of any person entitled to call a special meeting, it shall be the duty of the Secretary to call a special meeting of the shareholders, to be held at such time as the secretary may fix, not less than ten nor more than sixty days after receipt of the request."[1]

64. In January 2009, plaintiff was the secretary of MBP, but was not asked to fix the time of the meeting or otherwise notified of the special meeting.

65. The bylaws of MBP require that "Written notice of a special meeting of shareholders stating the time and place and object thereof, shall be mailed, postage prepaid, to each shareholder entitled to vote thereat at such address as appears on the books of the corporation, at least two days before such meeting, unless a greater period of notice is required by statute in a particular case."[2]

66. No written notice of the special meeting of shareholders of January 8, 2009 was given to plaintiff.

67. No written notice of any special meeting of the directors for January 8, 2009 was given to the plaintiff.

68. Ordinarily, officers of a corporation are hired and fired by the directors and not shareholders.

69. On January 8, 2009, the shareholders met without notice to Robert A. Mariotti, Sr., and in such a rushed fashion that they failed to wait the ten days required by the bylaws and voted to terminate him from employment at MBP.

70. Robert A. Mariotti, Sr., has been excluded from the business of MBP since January 8, 2009.

---

[1] RM1298
[2] RM1299

71. Prior to the termination or constructive discharge, MBP did not provide to Robert A. Mariotti, Sr., any warning or written notice claiming any deficiency in his work or performance.

72. Prior to the termination or constructive discharge, MBP did not provide to Robert A. Mariotti, Sr., any warning or written notice of any wrongdoing by MBP.

73. MBP has reported to the employees, public, the health insurance company and to retirement administrators that Robert A. Mariotti, Sr., "retired".  To others (e.g., Karl Kincel Insurance) MBP has reported that "Bobby [Mariotti] has left the company to follow his religious pursuits."  The termination letter itself suggested that Robert A. Mariotti, Sr., "resign" to "avoid embarrassment to yourself".

**Damage**

74. As a result of Defendant's intentional discrimination and actions, plaintiff has suffered past and future financial losses, deprivation of past and future income, (his past and prospective pay and benefits lost due to MBP's actions and discrimination described herein have a value of at least $1,860,000 and $986,268 respectively), embarrassment, damage to his reputation, humiliation, pain, mental anguish, loss of enjoyment of life and/or inconvenience.

75. Prior to the discharge, the discriminatory actions of MBP caused plaintiff personal anxiety, hurt and separation from his family, injury to his feelings, and isolation at work. Due to plaintiff's religion MBP undermined his authority and stature, by among other things making fun of his religious beliefs and excluding him from management decisions including those for the manufactured home sales divisions managed by plaintiff. The discriminatory action of the management of MBP encouraged or licensed other

17

employees to joke, humiliate, barb or scorn plaintiff, reducing the measure of respect to

which he was entitled commensurate with his position as Vice President, Secretary and

Manager of the manufactured housing sales division.  The actions of MBP unreasonably

interfered with plaintiff's work performance and substantially altered the nature of his

employment.

76. The manufactured housing sales division, built from nothing by plaintiff with his first

contacts at Simplex Industries, then located at Keyser Avenue, Taylor, Pennsylvania

(now in Scranton) and Contempri Homes, then located in Taylor, Pennsylvania, is the

largest portion of MBP's customer base representing approximately 70 percent of the

total revenues for MBP.

### Title VII Facts

77. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), provides in relevant

part with emphasis added:

78. It shall be an unlawful employment practice for an employer to discharge any individual,

or otherwise discriminate against any individual with respect to his compensation, terms,

conditions or privileges of employment **because of such individual's religion.**

79. Under well established law, the term "religion" **"includes all aspects of religious**

**observance and practice,** as well as belief, unless an employer demonstrates that he is

unable to reasonably accommodate to an employee's ... religious observance or practice

without undue hardship on the conduct of the employer's business." Thus, attending

church on Sundays, Monday, Tuesday, etc., attending daily Mass, making charitable

donations, belonging to a religious organization, speaking of religion in a eulogy, etc. is a

part of religious observance or practice, and therefore is included as an aspect of

"religion" that these laws protect. 42 U.S.C. § 2000e(j); Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 72-75 (1977); Protos. V. Volkswagen of Am., 797 F.2d 129, 134 (3d Cir. 1986); Ward v. Allegheny Ludlum Steel Corp., 560 F.2d 579, 580 n.1 (3d Cir. 1977).

80. Under well established law an employer has a duty to reasonably accommodate an employee's religious observances and practices, such as by offering to schedule the employee at a time that does not conflict with his religious obligations. Defendant has the burden of proving that it at least offered Robert A. Mariotti, Sr., a reasonable accommodation before deciding to fire him. 42 U.S.C. § 2000e(j); Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 69-70 (1986); Shelton v. Univ. of Med. & Dentistry of N.J., 223 F.3d 220, 225-26 (3d Cir. 2000); Am. Postal Workers Union v. Postmaster General, 781 F.2d 772, 776 (9th Cir. 1986).

81. Under the well established law the laws protect individuals rather than religious groups from discrimination because of their religion. Thus, the mere fact that the employer may have hired or retained other Christians or Catholics does not mean that it did not discriminate against Robert A. Mariotti, Sr., because of his religion. Rather, the question is whether Defendant discharged and/or discriminated against **Robert A. Mariotti, Sr., because of** *his religion.* Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 321 (3d Cir. 2000); Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 353-54 (3d Cir. 1999).

82. Well established law protects people of all religions from discharge decisions when their religion is a motivating factor in that decision. 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 2000e-2(m); 43 Pa. Cons. Stat. Ann. § 955(a); Desert Palace, Inc v. Costa, 539 U.S. 90, 101 (2003), Miller v. Cigna Corp., 47 F.3d 586, 598-99 (3d Cir. 1995)(en banc)

83. There was a difference in treatment by MBP against plaintiff, that was the result of purposeful actions and not accidental, and plaintiff's religion was a motivating factor in the treatment–that is, his religion made a difference in the employer's decisions to treat him differently and to discharge him.

84. MBP did not treat other employees who were not Catholic members of OFDW adversely as it treated plaintiff.

### PHRA Facts

85. The Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann § 955(a) *et seq.* provides in relevant part:

86. It shall be an unlawful discriminatory practice for any employer because of the religious creed to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment.

87. The history of the Commonwealth of Pennsylvania --and while not directly applicable to restrain private entities -- the law of Pennsylvania as reflected in its constitution sets forth the strong public policy of the Commonwealth of Pennsylvania, which states in pertinent part

> "WE, the people of the Commonwealth of Pennsylvania, grateful to Almighty God for the blessings of civil and religious liberty, and humbly invoking His guidance, do ordain and establish this Constitution. Article I, Declaration of Rights. That the general, great and essential principles of liberty and free government may be recognized and unalterably established, WE DECLARE THAT –

**Section 3. Religious Freedom**

All men have a natural and indefeasible right to **worship Almighty God according to the dictates of their own consciences**; no man can of right be compelled to attend, erect or support any place of worship or to maintain any ministry against his consent; **no human authority can, in any case whatever, control or interfere with the rights of conscience**, and no preference shall ever be given by law to any religious establishments or modes of worship.

**1st Claim for Relief – Violation of Title VII
Religious Discrimination**

88. Paragraphs 1 through 87 are incorporated herein by this reference.

89. Plaintiff was a member of a protected class, namely a member of Our Father's Divine Work, a Catholic lay ministry, claiming a personal relationship with God.

90. Plaintiff suffered an adverse employment action--termination, whether actual or constructive, as well as loss of salary, title and benefits.

91. Nonmembers of the protected class received more favorable treatment.

92. MBP by and through its shareholders, officers, directors and employees harbored discriminatory intent which motivated the discrimination against plaintiff.

**2nd  Claim for Relief – Violation of Title VII
Hostile Work Environment – Religious Discrimination**

93. Paragraphs 1 through 87 are incorporated herein by this reference.

94. Plaintiff, an employee, suffered intentional discrimination because of religion.

95. The discrimination was pervasive, regular and/or severe.

96. The discrimination detrimentally affected the plaintiff.

97. The discrimination would detrimentally affect a reasonable person of the same religion in that position.

98. Eugene L. Mariotti, Sr., and Louis C. Mariotti not only knew of the hostile environment but encouraged and licensed other employees to participate in the hostile work environment by their own actions which contributed to the hostile work environment.

## 3rd Claim for Relief – Violation of PHRA
## Religious Discrimination

99. Paragraphs 1 through 87 are incorporated herein by this reference

100.    MBP discriminated against plaintiff with respect to his tenure, terms, conditions or privileges of employment and discharged him because of his religious creed in violation of The Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. Ann § 955(a) et seq.

## 4th Claim for Relief – Breach of Employment Agreement

101.    Paragraphs 1 through 87 are incorporated herein by this reference

102.    The founding brothers of the corporation, Eugene L. Mariotti, Sr., Robert A. Mariotti, Sr., and Louis C. Mariotti were not "at-will employees" of the corporation but were employed with the corporation under an agreement and understanding that they

22

could be terminated only for cause, for which the brothers gave mutual consideration, incurred hardship and devoted their working lives to the company.

103.     In the shareholder agreement dated July 23, 2007, the right of employment was extended to the children and grandchildren of the founding brothers, in paragraph 1.04 which provided "All children and grandchildren of original shareholders [Eugene L. Mariotti, Sr., Robert A. Mariotti, Sr., and Louis C. Mariotti] shall have an opportunity to become employed by the Corporation and such employment shall not be unreasonably withheld."

104.     Plaintiff was terminated without cause on January 10, 2009, in violation of his agreement with the company.

105.     In addition to the damages previously stated, plaintiff has suffered the loss of past compensation and benefits as well as future lost compensation and benefits, past and future earnings on savings, past and future stature and reputation in the community and other losses.

## 5th Claim for Relief – Unlawful Termination

106. Paragraphs 1 through 87 are incorporated herein by this reference

107. MBP's termination of plaintiff implicates a clear mandate of public policy of the Commonwealth of Pennsylvania and is in violation thereof.

108. The public policy against religious discrimination and termination motivated by or in part by religious discrimination is so obviously against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, and is reflected in

the precedent, Constitution, court decisions and statutes of the Commonwealth of

Pennsylvania

### 6th Claim for Relief – Declaratory Judgment
### Corporate Law – *Ultra Vires* Action Without Proper Notice

109. Paragraphs 1 through 87 are incorporated herein by this reference

110. Pursuant to Pennsylvania law, 15 Pa. C.S. § 1701, 1703 and 1704, unless shareholders or

directors act with unanimous written consent under 15 Pa. C.S. § 1766 or 15 Pa. C.S. §

1727, or waive notice under 15 Pa. C.S. § 1705, notice must be given prior to a

shareholder's or directors meeting.

111. There was neither written consent of the directors and/or shareholders of MBP, nor did

the bylaws of MBP provide for partial consent of shareholders in lieu of a meeting.

112. Robert A. Mariotti, Sr., was not given actual or written notice in violation of both

Pennsylvania law and MBP's bylaws.

113. The action of the shareholders and/or directors dated January 8, 2009, and the

subsequent notification dated January 10, 2009, was *ultra vires* notwithstanding that it

and the subsequent actions of the officers and directors of MBP constituted a constructive

discharge or termination of plaintiff.


**WHEREFORE,** for the claims set forth above, plaintiff demands judgment against Mariotti

Building Products, Inc., for such compensatory and punitive damages, as may be set by the jury

and court, for past and future lost compensation, benefits, pain, suffering, humiliation, damage to

reputation and community stature, lost savings, pre and post judgment interest, increased award

for consequences of lump sum recovery, together with attorneys fees and costs, and declaratory

relief that the action of MBP shareholders and/or directors of January 8, 2009, and the

notification of January 10, 2009, was *ultra vires* and such other and further relief including

equitable relief as the court deems appropriate.


TRIAL BY JURY IS DEMANDED

ROBERT A. MARIOTTI, SR.

By:

Counsel

Clifford B. Cohn, Esq. (PA # 25847)
cbcohn@cbcohn.com
925 Public Ledger Building
620 Chestnut Street
Philadelphia, PA 19106
215-545-9660
215-215-925-5991(FAX)

Thomas H. Roberts, Esq. (Virginia State Bar # 26014)*
tom.roberts@robertslaw.org
Robert J. Gallagher, Esq. (Virginia State Bar # 74901)*
bob.gallagher@robertslaw.org
Thomas H. Roberts & Associates, P.C.
105 S 1st Street
Richmond, Virginia 23219
(804) 783-2000
(804) 783-2105 fax
(Counsel for plaintiff)

\* To be admitted pro hoc vice.